IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION


DR. RAMAN K. TALWAR,                                          3:06CV3092

       Plaintiff,

   v.                                                           ORDER

MERCER COUNTY JOINT TOWNSHIP
COMMUNITY HOSPITAL, et. al.


       Defendants.


     This is a suit by a doctor against a hospital, its medical staff, board of trustees, and chief

executive officer arising from the refusal of the hospital to extend staff privileges to the doctor.

Jurisdiction arises under 28 U.S.C. § 1331.

     The plaintiff, Dr. Raman K. Talwar, is licensed to practice medicine in Ohio. Dr. Talwar

asserts that the defendants wrongfully deprived him of staff privileges and discriminated against him

on the basis of race and national origin. The defendants, Mercer County Joint Township Community

Hospital and its various entities ["the Hospital"], are a health care provider located in Coldwater,

Ohio.[1]

---

[1]

Dr. Talwar's complaint names the following entities as defendants: Mercer County Joint Township
Community Hospital; Mercer County Hospital Executive Committee; Mercer County Medical Staff;
Mercer County Joint Township Community Hospital Board of Trustees; President & CEO of Mercer
County Joint Township Community Hospital; and Mercer County Joint Township Community
Hospital, John Doe.

1

Pending is the Hospital's motion for partial summary judgment [Doc. 21]. For the following reasons, the motion shall be granted.

## Background

Dr. Talwar alleges: 1) civil rights violations; 2) breach of contract; 3) denial of common-law fair procedure rights; 4) violation of due process rights; 5) defamation; and 6) racial discrimination and unfairly adverse recommendations. The Hospital's partial summary judgment motion pertains to counts two, three, four, and five, and counts one and six to the extent that they are not civil rights claims.

Before a doctor may care for patients at the Hospital, the Hospital must grant him or her staff privileges. Dr. Talwar submitted his application for staff privileges at the Hospital in vascular and general surgery on December 28, 2004. The Hospital granted Dr. Talwar temporary privileges on January 13, 2005.

On April 7, 2005, the Hospital's Medical Staff Credentials Committee ["the Credentials Committee"] met to review Dr. Talwar's application.[2] After meeting with the Credentials Committee, Dr. Talwar amended his application to request only staff privileges in general surgery. The Credentials Committee voted two to one on July 21, 2005 to recommend that the Medical Staff Executive Committee ["the MEC"] grant Dr. Talwar's application with one stipulation.[3]

---

[2]

The Credentials Committee is responsible for making a recommendation to the Medical Staff Executive Committee as to whether an applicant should be granted privileges. The Medical Staff Executive Committee then makes a formal recommendation to the Board of Trustees, which offers or denies privileges.

[3]

The Credentials Committee recommended that the MEC grant Dr. Talwar's application on the condition that, in lieu of the usual six-month review and advancement to active status, the Hospital review a set number of Dr. Talwar's cases for quality purposes prior to considering him for

On July 20, 2005, the MEC met to review Dr. Talwar's application and the recommendation of the Credentials Committee. After this meeting, the MEC instructed the Hospital's CEO to further investigate matters surrounding Dr. Talwar's application. The MEC later voted unanimously (with one abstention) to recommend to the Hospital's Board of Trustees ["the Board"] that it deny Dr. Talwar's application. On receiving notice of this decision, Dr. Talwar requested a hearing. That hearing, scheduled for October 10, 2005, was postponed at Dr. Talwar's request and rescheduled for December 12, 2005.

Prior to this hearing, on September 21, 2005, the MEC held another meeting to discuss additional issues with regard to Dr. Talwar's application. It determined that additional grounds further supported the decision to deny Dr. Talwar's application. The Hospital notified Dr. Talwar of these additional grounds in advance of the December 12, 2005, hearing. It gave him the materials on which the MEC intended to rely at the hearing.

After its September 21, 2005, meeting, the MEC asked the Credentials Committee to consider these additional issues and determine whether they altered the Credentials Committee's original recommendation. The Credentials Committee subsequently rescinded its earlier two to one vote and, by a unanimous vote, recommended that the Hospital deny Dr. Talwar's application.

At the hearing on December 12, 2005, legal counsel represented both parties and called witnesses for direct and cross-examination. At this hearing, Dr. Talwar made no objections as to the Hospital's compliance with the Medical Staff By Laws, the notices that he had received about the

---

advancement to the active medical staff. This is apparently not common procedure and gave the MEC cause for concern.

MEC's recommendation to deny his application, the appointment of the hearing officer, or the documentation which the Hospital provided to him before the hearing.

On February 13, 2006, the hearing officer recommended that the MEC uphold its recommendation to deny Dr. Talwar's application. On February 17, 2006, the MEC reaffirmed its original recommendation that the Board deny Dr. Talwar's application for privileges. The Hospital informed Dr. Talwar of this decision. On February 28, 2006, Dr. Talwar requested appellate review by the Board. After submitting closing statements, both sides presented oral arguments to the Board. On April 14, 2006, the Board upheld the MEC's recommendation and the Hospital again denied Dr. Talwar's application for privileges.

On December 26, 2006, Dr. Talwar brought this suit against the defendants.

## Discussion

## 1. Applicability of HCQIA to the Hospital

The basis for the Hospital's partial motion for summary judgment is that it is immune from liability in damages under the Health Care Quality Improvement Act ["HCQIA" or "the Act"]. Congress passed the HCQIA "in 1986 to provide for effective peer review and interstate monitoring of incompetent physicians, and to grant qualified immunity from damages for those who participate in peer review activities." *Meyers v. Columbia/HCA Healthcare Corp.*, 341 F.3d 461, 467 (6th Cir. 2003) (citing *Austin v. McNamara*, 979 F.2d 728, 733 (9th Cir. 1992); 42 U.S.C. § 11101).

"If a professional review action  .  .  .  of a professional review body" satisfies the requirements under 42 U.S.C. § 11112(a), then

> (A) the professional review body, (B) any person acting as a member or staff to the body, (C) any person under a contract or other formal agreement with the body, and (D) any person who participates with or assists the body with respect to the action,

4

shall not be liable in damages under any law of the United States or of any State . . . with respect to the action."[4]

42 U.S.C. § 11111(a)(1). To satisfy 42 U.S.C. § 11112(a) and receive qualified immunity,

a professional review action must be taken:
(1) in the reasonable belief that the action was in the furtherance of quality health care,
(2) after a reasonable effort to obtain the facts of the matter,
(3) after adequate notice and hearing procedures are afforded to the physician involved or after such other procedures as are fair to the physician under the circumstances, and
(4) in the reasonable belief that the action was warranted by the facts known after such reasonable effort to obtain facts and after meeting the requirement of paragraph (3).

42 U.S.C. § 11112(a).

The Act "creates a rebuttable presumption of immunity, forcing the plaintiff to prove that

the defendant's actions did not comply with the relevant standards." *Meyers*, *supra*, 341 F.3d at 467-

---

[4]

The HCQIA defines a "professional review action" as: "an action or recommendation of a professional review body which is taken or made in the conduct of professional review activity, which is based on the competence or professional conduct of an individual physician (which conduct affects or could affect adversely the health or welfare of a patient or patients), and which affects (or may affect) adversely the clinical privileges, or membership in a professional society, of the physician." 42 U.S.C. § 11151(9).

The HCQIA defines a "professional review body" as: "a health care entity and the governing body or any committee of a health care entity which conducts professional review activity, and includes any committee of the medical staff of such an entity when assisting the governing body in a professional review activity." 42 U.S.C. § 11151(11).

The HCQIA defines a "health care entity" as: "a hospital that is licensed to provide health care services by the State in which it is located." 42 U.S.C. § 11151(4)(A)(i).

The HCQIA defines a "professional review activity" as: "an activity of a health care entity with respect to an individual physician: (A) to determine whether the physician may have clinical privileges with respect to, or membership in, the entity, (B) to determine the scope or conditions of such privileges or membership, or (C) to change or modify such privileges or membership." 42 U.S.C. § 11151(10).

5

68 (citing 42 U.S.C. § 11112(a)). That is, "[a] professional review action shall be presumed to have met [the standards under 42 U.S.C. § 11112(a)] necessary for the protection set out in [42 U.S.C. § 11111(a)] unless the presumption is rebutted by a preponderance of the evidence." 42 U.S.C. § 11112(a). Thus, the summary judgment standard under 42 U.S.C. § 11112(a) asks whether "a reasonable jury, viewing the facts in the best light for [the plaintiff], [could] conclude that he has shown, by a preponderance of the evidence, that the defendants' actions are outside the scope of § 11112(a)[.]" *Meyers*, *supra*, 341 F.3d at 468 (quoting *Bryan v. James E. Holmes Reg'l Med. Ctr.*, 33 F.3d 1318, 1333 (11th Cir. 1994)).

The HCQIA applies in this case based on its definitions of "health care entity," "professional review body," "professional review activity," and "professional review action." *See* note 4, *supra*. First, the Hospital is "a health care entity" since it is a hospital licensed in the state of Ohio to provide health care services. 42 U.S.C. § 11151(4)(A)(i). Second, because the Hospital is a "health care entity," the Hospital, the Credentials Committee, the MEC, and the Board are considered "professional review bod[ies]." 42 U.S.C. § 11151(11). Third, the Hospital engaged in "professional review activity" when it determined whether to extend staff privileges to Dr. Talwar. 42 U.S.C. § 11151(10). Fourth, because the Hospital is a "professional review body" and because it engaged in "professional review activity," the recommendations by the Credentials Committee and the MEC, and the action taken by the Board with respect to Dr. Talwar's application, are considered "professional review action[s]." 42 U.S.C. § 11151(9).

Therefore, the HCQIA is applicable to the Hospital. The next question is whether the Hospital complied with the requirements of 42 U.S.C. § 11112(a).

### 2. Application of HCQIA to the Hospital's Decision Regarding Dr. Talwar

To receive qualified immunity under the Act, the Hospital must have satisfied the requirements of 42 U.S.C. § 11112(a) in its professional review action concerning Dr. Talwar. The Hospital's professional review action is presumed to have met these standards unless rebutted by a preponderance of the evidence.

For the reasons set forth below, viewing the facts in a light most favorable to Dr. Talwar, I find that a reasonable jury could not find, by a preponderance of the evidence, that the Hospital's actions fell outside of the requirements of § 11112(a).

### A. 42 U.S.C. § 11112(a)(1)

The first requirement under 42 U.S.C. § 11112(a) is: "[the] professional review action must be taken . . . in the reasonable belief that the action was in the furtherance of quality health care." 42 U.S.C. § 11112(a)(1). This "is an objective standard, rather than a subjective good faith requirement," *Meyers*, *supra*, 341 F.3d at 468 (citing *Bryan*, *supra*, 33 F.3d at 1323), and is satisfied if "the reviewers, with the information available to them at the time of the professional review action, would reasonably have concluded that their action would restrict incompetent behavior or would protect patients." *Bryan*, *supra*, 33 F.3d at 1323 (quoted in *Meyers*, *supra*, 341 F.3d at 468). Moreover, "[t]he Act does not require that the professional review result in actual improvement in the quality of health care, but only that it was undertaken in the reasonable belief that quality health care was being furthered." *Meyers*, *supra*, 341 F.3d at 468 (citing *Imperial v. Suburban Hosp. Ass'n, Inc.*, 37 F.3d 1026, 1030 (4th Cir. 1994)).

The MEC and the Credentials Committee had several concerns regarding Dr. Talwar's application. First, the committees were concerned that Dr. Talwar was not completely truthful regarding his status with Lima Memorial Hospital. In particular, questions remained as to Dr.

7

Talwar's alleged suit against Lima Memorial Hospital and why he was not advanced to active medical staff there.

Second, the committees discovered that Dr. Talwar misrepresented the total number of professional liability actions brought against him and the total payouts in each action. Third, the committees felt that Dr. Talwar was not completely forthright in explaining his privileges with, and frequency of practice at Paulding Community Hospital.

In light of these issues, the Hospital had reasonable concerns about Dr. Talwar's ability to provide quality health care and to behave in a professionally acceptable manner. Thus, in recommending that the Hospital deny Dr. Talwar's application for privileges, the MEC and the Credentials Committee reasonably believed their actions were taken "in the furtherance of quality health care."

In his response to the Hospital's partial motion for summary judgment, Dr. Talwar relies on *Wall v. Ohio Permanente Medical Group, Inc.*, 119 Ohio App. 3d 654 (1997). The court in *Wall* asserted that a showing of "actual malice" destroys the qualified immunity afforded under O.R.C. § 2305.25. *Id.* at 668 (citing *Jacobs v. Frank*, 60 Ohio St. 3d 111, 114-15 (1991)); O.R.C. § 2305.251 (allowing that a "person who provides information under this section" has immunity as long as that person provides such information "without malice and in the reasonable belief that the information is warranted by the facts known to the person").

The Ohio law cited by Dr. Talwar is, however, inapplicable: the basis for the Hospital's partial motion for summary judgment is qualified immunity under federal law, 42 U.S.C. § 11112(a),

not O.R.C. § 2305.25.[5] Dr. Talwar presents no case suggesting that "actual malice" results in forfeiture of the qualified immunity available under § 11112(a).

On the contrary: "bad faith on the part of the reviewers is irrelevant to the objective inquiry under 42 U.S.C. § 11112(a)." *Sugarbaker v. SSM Health Care*, 190 F.3d 905, 914 (8th Cir. 1999); *see also Meyers*, *supra*, 341 F.3d at 468 (citing *Bryan*, *supra*, 33 F.3d at 1323) ("It is an objective standard, rather than a subjective good faith requirement."); *Bryan*, *supra*, 33 F.3d at 1323, 1335 (noting that the applicable test is objective, so that any putative bad faith is immaterial); *Austin*, *supra*, 979 F.2d at 734 (same).

Thus, even if the Hospital acted with "actual malice" or "bad faith" toward Dr. Talwar, this alone would not defeat its right to qualified immunity under § 11112(a).

For the foregoing reasons, a reasonable jury could not find that the Hospital did not satisfy 42 U.S.C. § 11112(a)(1).

## B. 42 U.S.C. § 11112(a)(2)

The second requirement under 42 U.S.C. § 11112(a) is: "[the] professional review action must be taken  .  .  .  after a reasonable effort to obtain the facts of the matter." 42 U.S.C. § 11112(a)(2). The inquiry for this requirement "is whether the 'totality of the process' leading up to the professional review action evinced a reasonable effort to obtain the facts of the matter." *Meyers*, *supra*, 341 F.3d at 469 (quoting *Mathews v. Lancaster Gen. Hosp.*, 87 F.3d 624, 637 (3d Cir. 1996)).

A rational trier of fact could only conclude that the Hospital acted with a reasonable effort and was thorough in its attempt to obtain the facts relating to Dr. Talwar's application.

---

[5]
While the Hospital raised an immunity defense under O.R.C. 2305.25 in their answer to Dr. Talwar's complaint, the Hospital does not rely on immunity under O.R.C. 2305.25 in its pending partial motion for summary judgment.

Thus, the Credentials Committee: 1) reviewed Dr. Talwar's application; 2) met with Dr. Talwar; and 3) on request by the MEC, reviewed its initial recommendation to the MEC in light of additional information obtained. Next, the MEC: 1) reviewed Dr. Talwar's application; 2) reviewed the Credentials Committee's initial recommendation; 3) directed the Hospital's CEO to investigate further; and 4) considered the newly discovered information.

In addition to these efforts, a hearing was scheduled on Dr. Talwar's request at which he was able to present evidence and call witnesses. Finally, prior to the Board making its final decision, Dr. Talwar was able to provide a written statement to the Board and present oral arguments before it.

Therefore, considering the "totality of the process" surrounding Dr. Talwar's application, the Hospital engaged in reasonable efforts to obtain information from its own investigation and from Dr. Talwar himself. A reasonable jury could not find that the Hospital did not satisfy the requirement under 42 U.S.C. § 11112(a)(2).

### C. 42 U.S.C. § 11112(a)(3)

The third requirement under 42 U.S.C. § 11112(a) is: "[the] professional review action must be taken  .  .  .  after adequate notice and hearing procedures are afforded to the physician involved or after such other procedures as are fair to the physician under the circumstances." 42 U.S.C. § 11112(a)(3).[6]

_____

[6]

Adequate notice and hearing is described in 42 U.S.C. § 11112(b), which in its entirety provides:

> (b) Adequate notice and hearing. A health care entity is deemed to have met the adequate notice and hearing requirement of subsection (a)(3) with respect to a physician if the following conditions are met (or are waived voluntarily by the physician):
> (1) Notice of proposed action. The physician has been given notice stating--
> (A)(i) that a professional review action has been proposed to be taken against the physician,

(ii) reasons for the proposed action,

(B)(i) that the physician has the right to request a hearing on the proposed action,

(ii) any time limit (of not less than 30 days) within which to request such a hearing, and

(C) a summary of the rights in the hearing under paragraph (3).

(2) Notice of hearing. If a hearing is requested on a timely basis under paragraph (1)(B), the physician involved must be given notice stating--

(A) the place, time, and date, of the hearing, which date shall not be less than 30 days after the date of the notice, and

(B) a list of the witnesses (if any) expected to testify at the hearing on behalf of the professional review body.

(3) Conduct of hearing and notice. If a hearing is requested on a timely basis under paragraph (1)(b)--

(A) subject to subparagraph (B), the hearing shall be held (as determined by the health care entity)--

(i) before an arbitrator mutually acceptable to the physician and the health care entity,

(ii) before a hearing officer who is appointed by the entity and who is not in direct economic competition with the physician involved, or

(iii) before a panel of individuals who are appointed by the entity and are not in direct economic competition with the physician involved;

(B) the right to the hearing may be forfeited if the physician fails, without good cause, to appear;

(C) in the hearing the physician involved has the right--

(i) to representation by an attorney or other person of the physician's choice,

(ii) to have a record made of the proceedings, copies of which may be obtained by the physician upon payment of any reasonable charges associated with the preparation thereof,

(iii) to call, examine, and cross-examine witnesses,

(iv) to present evidence determined to be relevant by the hearing officer, regardless of its admissibility in a court of law, and

(v) to submit a written statement at the close of the hearing; and

(D) upon completion of the hearing, the physician involved has the right--

(i) to receive the written recommendation of the arbitrator, officer, or panel, including a statement of the basis for the recommendations, and

(ii) to receive a written decision of the health care entity, including a statement of the basis for the decision.

A professional review body's failure to meet the conditions described in this subsection shall not, in itself, constitute failure to meet the standards of subsection (a)(3).

11

An August 18, 2005, letter from T.J. Padden, the CEO of the Hospital, gave Dr. Talwar notice of: 1) the MEC's recommendation to deny his application; 2) the MEC's reasons for taking this action; 3) his right to a hearing and appellate review; 4) the time by when he must request a hearing – within thirty days of receiving the August 18, 2005, letter; and 5) his rights in the hearing as outlined in the Hospital's Medical Staff By Laws. This letter satisfies the conditions under 42 U.S.C. § 11112(b)(1).

Dr. Talwar requested a hearing in a letter dated August 21, 2005, well within the thirty day period allotted in Padden's August 18, 2005, letter. On September 1, 2005, the Hospital notified Dr. Talwar of: 1) the hearing date, time, and place; 2) the appointed hearing officer; 3) Dr. Talwar's right to object to the hearing officer; and 4) the witnesses the Hospital expected to call at the hearing. This satisfies the conditions under 42 U.S.C. § 11112(b)(2).

The hearing officer chosen by the Hospital was not in direct economic competition with Dr. Talwar and Dr. Talwar did not object to his appointment. In addition, Dr. Talwar: 1) was represented at the hearing by counsel; 2) had access to the written record of the hearing; 3) was able to call, examine and cross-examine witnesses at the hearing; 4) was able to present documents and exhibits at the hearing; and 5) had the opportunity to submit a post-hearing brief to the hearing officer presenting his final position on the matter. After the hearing, Dr. Talwar: 1) received a written copy of the hearing officer's Report and Recommendation; 2) was given the opportunity to submit an appellate review statement presenting his position to the Board; and 3) was given written notice as to the Board's final decision in a letter dated March 31, 2006. The notices and hearings satisfy 42 U.S.C. § 11112(b)(3).

---

42 U.S.C. § 11112(b).

The Hospital satisfied all of the conditions under 42 U.S.C. § 11112(b). Therefore, the Hospital "is deemed to have met the adequate notice and hearing requirement of [42 U.S.C. § 11112(a)(3)]." 42 U.S.C. § 11112(b). Consequently, a reasonable jury could not find that the Hospital's actions did not satisfy 42 U.S.C. § 11112(a)(3).

### D. 42 U.S.C. § 11112(a)(4)

The fourth requirement under 42 U.S.C. § 11112(a) is: "[the] professional review action must be taken . . . in the reasonable belief that the action was warranted by the facts known after such reasonable effort to obtain facts and after meeting the [adequate hearing and notice] requirement." 42 U.S.C. § 11112(a)(4). Based on their similarities, analysis under 42 U.S.C. § 11112(a)(4) "closely tracks" analysis under 42 U.S.C. § 11112(a)(1). *Meyers*, *supra*, 341 F.3d at 471 (quoting *Gabaldoni v. Washington County Hosp. Ass'n*, 250 F.3d 255, 263 n.7 (4th Cir. 2001)).

As discussed in § 2.A. above, the Hospital reasonably believed that Dr. Talwar was not completely forthright in his application for privileges. Among its concerns were potential misrepresentations regarding: 1) Dr. Talwar's status with Lima Memorial Hospital; 2) the number of professional liability actions brought against Dr. Talwar; and 3) Dr. Talwar's status with Paulding Community Hospital. These issues went directly to matters of fundamental concern: namely, whether Dr. Talwar, on the basis of his record, was trustworthy and a competent physician. No rational jury could conclude that basing a decision on these concerns was not proper.

Moreover, the Board's decision to deny Dr. Talwar's application is supported by the hearing officer's Report and Recommendation. Finally, as explained in § 2.C. above, the Hospital satisfied the conditions for adequate notice and hearing.

13

Therefore, the Hospital reasonably believed its denial of Dr. Talwar's application was warranted after making a reasonable effort to obtain the facts, and the Hospital satisfied the adequate notice and hearing requirements. A reasonable jury, then, could not conclude by a preponderance of the evidence that the Hospital's actions fell outside the requirement under 42 U.S.C. § 11112(a)(4).

**Conclusion**

For the foregoing reasons, it is hereby

ORDERED THAT the motion of the defendants for partial summary judgment be, and the same hereby is granted.

So ordered.

s/James G. Carr
James G. Carr
Chief Judge

14