IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Dr. Raman K. Talwar,  Case No. 3:06CV3092

    Plaintiff

v.  ORDER

Mercer County Joint Township, et al.,

    Defendants

This is an employment discrimination case by a doctor against a hospital, its medical staff, board of trustees and chief executive officer. The plaintiff, Dr. Raman K. Talwar, asserts that by denying his application for staff privileges, the defendants discriminated against him on the basis of race and national origin in violation of 42 U.S.C. §§ 1981 and 1983. [1]

---

[1] The defendants include Mercer County Joint Township Community Hospital, Mercer County Hospital Executive Committee, Mercer County Medical Staff, Mercer County Joint Township Community Hospital Board of Trustees, John Doe and President & CEO of Mercer County Joint Township Community Hospital [collectively referred to as "Mercer" or "Hospital"].

The individual defendants are all connected to the defendant Mercer County Joint Township Community Hospital in Coldwater, Ohio.

1

Jurisdiction exists under 28 U.S.C. § 1331. Pending is defendants' motion for summary judgment [Doc. 35]. For the reasons discussed below, defendants' motion shall be granted.

## Background

Before a doctor may care for patients at Mercer, the Hospital must grant him staff privileges. Dr. Talwar, an Asian-American surgeon licensed in the State of Ohio, submitted his application for staff privileges in vascular and general surgery on December 28, 2004. The Hospital granted Dr. Talwar temporary privileges on January 13, 2005.

On April 7, 2005, the Hospital's Medical Staff Credentials Committee ["Credentials Committee"] met to review Dr. Talwar's application. [2] After meeting with the Credentials Committee and learning of its concern about the distance between the Hospital and Dr. Talwar's residence, Dr. Talwar amended his application to request staff privileges only in general surgery. The Credentials Committee voted two to one on July 21, 2005 to recommend that the Medical Staff Executive Committee ["MEC"] grant Dr. Talwar's application with one stipulation. [3]

On July 20, 2005, the MEC met to review Dr. Talwar's application and the Credentials Committee's recommendation. After this meeting, the MEC instructed the Hospital's CEO to further investigate matters surrounding Dr. Talwar's application. The Hospital's attorney, Catherine Ballard,

---

[2] The Credentials Committee is responsible for making a recommendation to the Medical Staff Executive Committee as to whether an applicant should be granted privileges. The Medical Staff Executive Committee then makes a formal recommendation to the Board of Trustees, which offers or denies privileges.

[3] The Credentials Committee recommended that the MEC grant Dr. Talwar's application on the condition that, in lieu of the usual six-month review and advancement to active status, the Hospital review a set number of Dr. Talwar's cases for quality purposes prior to considering him for advancement to the active medical staff. This is apparently not common practice and gave the MEC cause for concern.

conducted this investigation. The MEC later voted unanimously (with one abstention) to recommend to the Hospital's Board of Trustees ["Board"] that it deny Dr. Talwar's application. On receiving notice of this decision, Dr. Talwar requested a hearing. Originally scheduled for October 10, 2005, the Hospital postponed the hearing at Dr. Talwar's request and rescheduled it for December 12, 2005.

Prior to this hearing, on September 21, 2005, the MEC held another meeting to discuss some additional issues discovered by Ballard, and determined that these issues further supported its decision to deny Dr. Talwar's application. The Hospital notified Dr. Talwar of these additional grounds in advance of the December 12, 2005, hearing and gave him the materials on which the MEC intended to rely.

Its reasons included misstatements and omissions in Dr. Talwar's application, including his reporting a different number of malpractice settlements than those listed in the National Practitioner Data Bank ["Data Bank"], omitting pending litigation against Lima Memorial Hospital and inaccurately representing his scope of privileges at Paulding Community Hospital. Further, the Hospital never received a peer review reference. Dr. Talwar also failed to provide information regarding his practice from 1987-1989, and update his application with respect to professional liability insurance and status at Paulding Community Hospital.

After its September 21, 2005, meeting, the MEC asked the Credentials Committee if it wanted to reconsider its original recommendation in light of these additional issues. The Credentials Committee subsequently rescinded its earlier two to one vote and, by a unanimous vote, recommended that the Hospital deny Dr. Talwar's application.

At the hearing on December 12, 2005, legal counsel represented both parties and called witnesses for direct and cross-examination. At this hearing, Dr. Talwar made no objections as to the Hospital's compliance with the Medical Staff Bylaws ["Bylaws"], the notices that he had received about the MEC's recommendation to deny his application, the appointment of the hearing officer or the documentation which the Hospital provided to him before the hearing.

Dr. Talwar did, however, contest the validity of most of the Hospital's stated reasons for recommending that the Board deny his application – contentions that he continues to assert in this case. First, he asserts that the Ohio Department of Insurance guidelines obligate him to report only the past ten years of malpractice settlements. Next, Dr. Talwar challenges the accuracy of the Data Bank reports regarding his loss of privileges at Lima Memorial Hospital. Dr. Talwar asserts that his application misstated neither his litigation against Lima Memorial Hospital nor the scope of his privileges at Paulding Hospital, and that a fellow surgeon, Dr. Hixenbaugh, submitted a letter recommending him for privileges which arrived on December 15, 2005. Finally, Dr. Talwar contends that he provided proof of malpractice insurance.

On February 13, 2006, despite Dr. Talwar's proffered evidence of the Hospital's false statements, the hearing officer recommended that the MEC uphold its recommendation to deny Dr. Talwar's application. The officer also made certain factual findings. These included that Dr. Talwar had a duty, as a matter of law, to report all of his malpractice settlements, even ones that occurred over ten years ago and an obligation to keep his application updated. Thus, the MEC had a factual basis to conclude that the application was incomplete. The hearing officer also determined that, although part of Dr. Talwar's statements about his litigation against Lima Memorial Hospital were true, they were dubious and misleading, as he omitted relevant facts.

On February 17, 2006, the MEC reaffirmed its original recommendation that the Board deny Dr. Talwar's application for privileges. The Hospital informed Dr. Talwar of this decision. On February 28, 2006, Dr. Talwar requested appellate review by the Board. After submitting closing statements, both sides presented oral arguments to the Board. On April 14, 2006, the Board upheld the MEC's recommendation and the Hospital again denied Dr. Talwar's application for privileges. [4]

On December 26, 2006, Dr. Talwar brought this suit alleging: 1) civil rights violations; 2) breach of contract; 3) denial of common-law fair procedure rights; 4) violation of due process rights; 5) defamation; and 6) racial discrimination and unfairly adverse recommendations. On November 8, 2007, I granted defendants' motion for partial summary judgment to counts two, three, four, and five, and counts one and six to the extent that they were not civil rights claims.

Remaining are Dr. Talwar's claims for discrimination based on race and national origin under 42 U.S.C. §§ 1981 and 1983. [5]

---

[4] Thus, in making its decision, the Board considered, among other things: 1) the MEC's recommendation, formed after three meetings reviewing Dr. Talwar's application and a full evidentiary hearing; 2) the hearing officer's 29-page Report & Recommendation; and 3) Dr. Talwar's closing statements and oral arguments.

[5] It is unclear whether Dr. Talwar's opposition to summary judgment attempts to raise new claims, as it references claims for tortious interference with business relationships, public policy violations, violation of a duty of good faith and fair dealing and hostile work environment. To the extent that Dr. Talwar is raising new claims, I will not evaluate them. Such claims were either omitted from Dr. Talwar's complaint and thus, not properly raised for the first time in opposition to summary judgment, or previously disposed of in defendants' first motion for partial summary judgment. *See Naples v. Lowellville Police Dept.*, 125 Fed.Appx. 636, 644 (6th Cir.2005) (unpublished disposition).

**Standard of Review**

The moving party is entitled to a judgment as a matter of law where the pleadings, depositions, answers to interrogatories, admissions on file and affidavits show that there is no genuine issue as to any material fact. Fed.R.Civ.P. 56(c). A genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986) ("[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.") (Emphasis in original).

In considering Mercer's motion, I must accept Dr. Talwar's evidence as true and draw all reasonable inferences in his favor. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). If, as the nonmoving party, Dr. Talwar fails to make a sufficient showing on an essential element of his case, Mercer is entitled to summary judgment as a matter of law. *See id.*

**Discussion**

**1. Section 1981**

"Section 1981 offers relief when racial discrimination blocks the creation of a contractual relationship, as well as when racial discrimination impairs an existing contractual relationship, so long as the plaintiff has or would have rights under the existing or proposed contractual relationship." *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006); *Talwar v. Catholic Healthcare Partners*, 258 Fed.Appx. 800, 803-805 (6th Cir.2007) (unpublished disposition).

Under Ohio law, a hospital's bylaws may constitute a contract if they demonstrate an intent to be bound. *See Munoz v. Flower Hosp.*, 30 Ohio App.3d 162, 166 (1985). Courts, moreover, have found that bylaws lacking mutuality are not contracts. *See id.*

Dr. Talwar cannot prevail in his § 1981 claim because he has not established the existence of a contractual right. *See Talwar, supra*, 258 Fed.Appx. at 803-805. He has not provided sufficient evidence – indeed, he has not provided any evidence – from which a jury could find that a contract existed between the parties.

The preamble to Mercer's Bylaws states: "WHEREAS, it is recognized that the Medical Staff is responsible for the quality of professional services provided by individuals with defined privileged in the Hospital and must accept and discharge this responsibility, *subject to the ultimate authority of the Hospital Governing Body*." [Doc. 35] [Emphasis supplied]. Likewise, the body of the Bylaws states: "Development and adoption of Bylaws and Rules & Regulations which establish a framework for self-governance, *subject to the ultimate authority of the Governing Body of the Hospital*." [*Id.*] [Emphasis supplied].

Such language indicates a lack of mutuality between the parties which, in turn, establishes that the Bylaws do not constitute contracts. *See Talwar, supra*, 258 Fed.Appx. at 804-05 (concluding that the hospital's bylaws are not a contract because they are "subject to the ultimate authority of the Hospital"); *Munoz, supra*, 30 Ohio App.3d at 166 (rejecting the doctor's contention that the hospital's bylaws constituted a contract because they were "subject to the ultimate authority of the applicable governing bodies").

7

I conclude, therefore, that without mutuality of obligation, Mercer's Bylaws are not contracts. This bars Dr. Talwar from establishing the existence of a contractual relationship, and consequently, his § 1981 claim.

### 2. Section 1983

To bring a § 1983 claim, plaintiff must establish that: 1) defendants acted under color of state law; 2) defendants' conduct deprived plaintiff of his constitutional rights; and 3) such deprivation occurred without due process of law. *Talwar v. Catholic Healthcare Partners*, 2006 WL 3526792, *1 (N.D.Ohio 2006). [6]

In the Sixth Circuit, courts assess disparate treatment claims brought under § 1983 in the same manner as those brought under Title VII. *Gutzwiller v. Fenik*, 860 F.2d 1317, 1326 (6th Cir.1988). The plaintiff must present either direct evidence of the alleged discrimination or circumstantial evidence that creates an inference of unlawful discrimination. *Jacklyn v. Schering Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir.1999).

The crux of Dr. Talwar's argument is that the Hospital's attorney provided the defendants with false information because of his race or color. By relying on such information and denying Dr. Talwar's application for staff privileges, the Board, consequently, acted as the attorney's "conduit" or "dupe" and engaged in unlawful discrimination.

---

[6]

The first and third element are not in dispute at this point in the litigation. The defendants do not deny that they are a public agency engaged in state action, and I have already ruled that the Hospital provided Dr. Talwar with constitutionally sufficient due process. *Talwar v. Mercer County Joint Tp. Community Hosp.*, 520 F.Supp.2d 894, 903 (N.D.Ohio 2007).

### A. Direct Evidence

"[D]irect evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Jacklyn, supra*, 176 F.3d at 926. If the plaintiff establishes credible direct evidence, the burden of persuasion shifts to the defendant to show that it would have acted in the same way even if it had not been motivated by discrimination. *See Price Waterhouse v. Hopkins*, 490 U.S. 228, 244-45 (1989) (plurality) (superseded by statute on other grounds); *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 571 (6th Cir.2003).

Dr. Talwar contends that he has presented direct evidence of unlawful discrimination – I disagree. Dr. Talwar points to three letters: one from the Hospital's CEO acknowledging receipt of Dr. Talwar's request for appellate review of the MEC decision; another from Ballard agreeing to extend the hearing date; and the third from Paulding County Hospital's CEO clarifying the status of Dr. Talwar's privileges.

None of these letters provide any basis for concluding that unlawful discrimination partly or wholly motivated the Hospital's conduct. As such, these letters do not constitute direct evidence that the Hospital intentionally discriminated against Dr. Talwar on the basis of his race or color.

### B. Circumstantial Evidence

Courts analyze claims of unlawful discrimination unsupported by direct evidence under the three-step, burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U .S. 792, 802 (1973). *Ercegovich v. Goodyear Tire & Rubber Co.,* 154 F.3d 344, 350 (6th Cir.1998).

Under this test, Dr. Talwar must first establish a *prima facie* case of discrimination. *See id*. If he does so, the burden shifts to the Hospital to articulate a legitimate, non-discriminatory reason

for its action. *See Wexler*, *supra*, 317 F.3d at 574. If the Hospital does so, the burden shifts back to Dr. Talwar to "rebut [] this proffered reason by proving that it was a pretext." *See id.*

### i. *Prima Facie* Case

To establish his *prima facie* case, Dr. Talwar must show that: 1) he is a member of a "protected class"; 2) he is qualified for the position; 3) the defendants subjected him to an "adverse employment action"; and 4) the defendants treated similarly situated individuals more favorably than him. *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir.1992).

Born in India, Dr. Talwar is an Asian-American and thus, a member of a protected class. Dr. Talwar is qualified to work a surgeon, and Mercer subjected him to an adverse employment action by denying his application for staff privileges. *See Wexler*, *supra*, 317 F.3d at 575-76 (when evaluating qualifications at this stage, courts determine whether the plaintiff could do the job in the abstract, without looking to the defendant's assessment).

Despite this, Dr. Talwar cannot establish his *prima facie* case as he cannot show that the Hospital – or Ballard – treated individuals outside of his protected class more favorably than him. *See generally Mitchell*, *supra*, 964 F.2d at 582-83. Although Ballard might have provided inaccurate information about Dr. Talwar, there is no evidence that she performed a more thorough investigation for individuals of other races. Dr. Talwar did not present evidence that the Hospital treated similarly situated physicians (i.e., physicians with applications that the Hospital deemed to contain false, misleading or incomplete information) differently.

Dr. Talwar provided affidavits from two Caucasian physicians with privileges who live thirty miles from the Hospital. He claimed that this showed that the Hospital treated two similarly-situated

individuals more favorably than him because the Credentials Committee questioned his ability to work as a vascular surgeon so far from the Hospital.

This argument is unavailing. The Credentials Committee initially expressed concern about the distance between Dr. Talwar's residence and the Hospital with regard to his application for vascular surgery privileges. When Dr. Talwar amended his application to focus exclusively on general surgery, distance was no longer an issue. In any event, distance was not an issue that the Hospital cited as grounds for denying his application.

Moreover, although not conclusive evidence against Dr. Talwar's claim, it is notable that when Dr. Talwar sought medical staff privileges, Mercer's medical staff consisted of roughly eighty physicians, and approximately twelve – fifteen percent – were from India. The Hospital also employed physicians from Korea, the Philippines, Egypt, Jordan, Lebanon, Syria, China, Pakistan, as well as African-American and Asian-American physicians. Such diversity, especially the large percentage of physicians of the same race and color as Dr. Talwar, contradicts his contention that the Hospital discriminated against him based on his race and color.

### ii. Legitimate Nondiscriminatory Reason

Even if Dr. Talwar could make out a *prima facie* case for employment discrimination, the Hospital articulated legitimate, nondiscriminatory reasons for its decision. *See Wexler*, *supra*, 317 F.3d at 574. The Hospital determined that Dr. Talwar's application for medical staff privileges contained significant misstatements and omissions and otherwise failed to satisfy its concerns regarding his competency.

As previously noted, Mercer's reasons for denying Dr. Talwar's application included his reporting a different number of malpractice settlements than found in the Data Bank, omitting

11

pending litigation against Lima Memorial Hospital and inaccurately representing the scope of his privileges at Paulding Community Hospital. Further, the Hospital cited Dr. Talwar's failure to provide information regarding his practice from 1987-1989, provide a peer review, and update his application with respect to professional liability insurance and status at Paulding Community Hospital.

### iii. Pretext

The Hospital having articulated legitimate, nondiscriminatory reasons for its decision, the burden shifts back to Dr. Talwar to prove a genuine dispute as to whether the Hospital's articulated reasons were true or offered simply as pretext to conceal its discriminatory animus. *See Wexler, supra*, 317 F.3d at 574. Even if Dr. Talwar had established his *prima facie* case of employment discrimination, which he did not, he cannot meet his burden of proving that pretext underlies Mercer's articulated explanation.

Dr. Talwar asserts, generally, that Ballard manifested her animus against him by deliberately presenting the Hospital with false information. The mere fact that Ballard may have done a poor job gathering information on Dr. Talwar is not, however, evidence of animus. Neither the Hospital nor Ballard's actions rose to the level of discriminatory action, as Ballard relied on the Data Bank to gather her information about Dr. Talwar and accurately reported this information to the Hospital. *See Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1116-17 (6th Cir.2001) (explaining the "honest belief" rule: "Under this rule, as long as an employer has an honest belief in its proffered nondiscriminatory reason for discharging an employee, the employee cannot establish that the reason was pretextual simply because it is ultimately shown to be incorrect.").

Dr. Talwar contends that the Hospital manifested its discriminatory intent by failing to make a reasonable effort to fill the holes in his application; he argues that the Hospital should have contacted another surgeon directly to request a peer review. This is unsound. As the applicant, Dr. Talwar had the burden of completing his application, not the Hospital. That being said, had Dr. Talwar shown that the Hospital filled in other applicants' omissions, then this would provide greater evidence of pretext. Dr. Talwar, however, has not done so.

Based on the foregoing, I find a complete lack of evidence to suggest, much less on which a rational jury could find, pretext.

## Conclusion

For the foregoing reasons, it is hereby:

ORDERED THAT defendants' motion for summary judgment be, and the same hereby is granted.

So ordered.

s/James G. Carr
James G. Carr
Chief Judge